believe we're ready to proceed on the first case SEC v. Romeril. We'll hear from the appellant. Good morning. I'm Margaret Little from the New Civil Liberties Alliance representing Barry Romeril. Two points are essential to understanding this case. And the first is what an anomaly this is. Out of the thousands of state and federal agencies, the SEC is one of only two federal agencies that believe they can impose a rule of a lifetime gag as a condition of settlement. Both the SEC and CFTC, which also has a similar role, are outliers. The Department of Justice has no such rule, nor do any of the hundreds of other federal agencies which manage to regulate Americans and settle enforcement matters with them without resort to silencing them. Those agencies suffer no diminishment of regulatory efficacy or authority. This is a profoundly dangerous practice. A powerful government agency is able to say, we control the narrative of our enforcement proceedings for life by unproven allegations that you can never cast into doubt. Well, even assuming that we agree with you about that, could you address whether Rule 60B-4 is the appropriate venue for addressing this question? I mean, as I read Espinoza, the circumstances in which that relief would be appropriate are extremely narrow, and I'm having difficulty seeing how Crosby changes that. I'd be happy to, Your Honor. Crosby holds, and it is the law of this circuit, that where the court has entered an action that violates the Constitution in so much as it is a prior restraint, that is void ab initio. How is this a prior restraint, Ms. Little? The way I read the consent that your client entered, the remedy here, if he did speak out in violation of that provision, would be that the SEC could reopen the case and vacate the judgment and reinstitute the action. So I didn't see any injunctive language saying, I enjoin you from speaking. But the case law on unconstitutional conditions and prior restraints does not turn on the nature of the penalty. As long as you were penalizing someone for their speech, it is a prior restraint. We're certainly reopening the case and re-prosecuting him under the administrative procedure. Tell me what case said that if you say something you're not supposed to say under an agreement, a settlement agreement or some agreement, that that's, and you're going to get, the other side could get damages. That's a prior restraint because your speech is being limited. Which case says that? Well, Crosby says that if. No, no. Crosby said that this is void because it's an injunction that's enforceable through the contempt power and therefore is a prior restraint. So that's true. But this. The injunction and the contempt power, I think were sort of critical to the Crosby holding. I think not. And because the government is still penalizing the speech by reopening or even allowing the SEC to act to reopen a prosecution that has been settled. But why? I mean, why would it be wrong to allow the government to reopen the case? I mean, part of the bargain was this no deny provision. And why should Mr. Romero be able to have it both ways? Oh, he doesn't have it both ways. First of all, it was not a bargain. He wants to undo part of the consent decree. Of course he does, because it is an unconstitutional condition. The idea that he consented to this is a fiction. The SEC said, and it is in their briefing below as well, that it has a policy that it will only settle with enforcement targets if they surrender their First Amendment rights to challenge any aspect of the allegations of the complaint against them. That is not a bargain that is forced upon anyone who settles. Well, Mr. Romero could have chosen not to settle if he felt that strongly about it. Yeah, but that's not how the law of unconstitutional conditions works in all the cases under unconstitutional conditions. And I would draw your attention to Legal Services Corporation, Barron v. Burnside, and Nolan and Spieser. Those are all cases where the government conditioned something it didn't have to give you in the first place, but they conditioned it upon the surrender of a constitutional right. But I thought that doctrine applied to government benefits, and correct me if I'm misunderstanding it. And I don't think of a settlement as – I mean, settlements benefit the public as well as they may benefit the settling party. But it's not, strictly speaking, a government benefit. Well, it is certainly something any American who's being prosecuted by a federal agency should be able to do, and that is settle their case. And the government cannot put an unconstitutional condition on that ability to settle. That allows the SEC, in this particular instance, to silence 98% of the people whom they charge, because 98% of those cases settle. That, again, is profoundly dangerous because we do not know what goes on in those proceedings, because the person most knowledgeable about those claims is forced to be silent about them forever. So why wouldn't the proper way to challenge this be by speaking and then challenging the ability of the SEC to reopen the case? That's the collateral bar rule, which we set forth in our briefing. And that is a rule – actually, the case came up under Dr. Martin Luther King, who was under a speech bar, and it involved the state of Alabama. And long story short, he could not go out there and speak and then hope that his First Amendment rights could be a defense. You need to challenge the court order that is silencing you in the context of the original action in which that order was issued. And that is what we have done here. Can you tell me why – I know our case law says under Rule 60B4, the time frame is – I think the term is exceedingly lenient – but why did your client wait 16 years? What was the reason – if this provision is limiting him in a substantial way that you're arguing, why didn't he make this motion much earlier? He did not know that this SEC did not have this power. I mean, one of the disturbing things about this is if you look into the paperwork that gets signed, it says the SEC has this rule and you may not settle unless you agree to this gag. And so in November of 2018, I published an editorial in the Wall Street Journal that said, this can't possibly be constitutional. Mr. Murrell read it that day and called me up. And that's why we're here. We'll hear from the SEC. Thank you, Ms. Little. Good morning, and may it please the court, Jeff Berger for the Securities and Exchange Commission. There's only one issue on appeal, and it concerns Rule 60B4. And the district court's order should be affirmed because there is no subject by jurisdictional or due process defect in the consent judgment that would permit relief under Rule 60B4 as an exception to the important rule of finality. In this case, it does not present the rare instance where a judgment entered by consent more than 15 years ago is void. Espinoza is the key case here. The court made clear its unanimous decision that there is an exceedingly short list of fundamental infirmities that would render a judgment void. And that list has only two entries, neither of which apply here. Rule 64 is applicable only in the rare instance where there is no subject matter or personal jurisdiction, or there is a due process violation that deprives a party of notice or the opportunity to be heard. So your position, Mr. Berger, is that Espinoza overrules Crosby? Is that your position? I think our position is that Crosby is in some ways a difficult case to interpret, in part because it's very short. There's not a lot of analysis. So I think our initial position is that there is a way that Crosby can be read consistent with Espinoza, which was that it was presenting a unique jurisdictional issue, namely whether equity courts have subject matter jurisdiction to enjoin defamation. I don't know that Crosby is that narrow because Crosby – the reason that Crosby considered that to be an improper prior restraint was that it enjoined any reports involving Mr. Crosby. It wasn't whether it was defamatory or not. It was much broader than that. So I don't really view the Crosby whole being as unique to defamation, but maybe I'm missing something. Yeah, and I say that that's one way to read it. And the problem is that if you read it more broadly, is that it seems inconsistent with the Supreme Court's decision in Swift from 1927, which would have been in its presence at the time, that even gross error in a consent decree would not render it void because such an error is waived by the consent of the party. It's a consent decree and does not go to the power of the court to adjudicate between the parties. The uniqueness could be more generally just a prior restraint, a non-constitutional prior restraint, essentially saying that that's jurisdictional, that you don't – you lack the power and therefore it's jurisdictional and therefore would be consistent with Espinoza, which is more – I think Espinoza is more focused on due process than where the grounds of jurisdiction are. I mean, I think if that is how Crosby is being read, I think that's problematic in terms of Espinoza because Espinoza is very clear that a judgment is not void simply because it is or may have been erroneous. It's talking about subject matter jurisdiction or personal jurisdiction, and I think it really is important in light of the sort of project the Supreme Court has undertaken in the last 15 years or so to really narrow what jurisdiction means. I mean I don't know whether – I don't know whether this is technically subject matter jurisdiction, but the argument is that a court has no jurisdiction to issue this kind of an order. So it certainly is similar to – in other words, right from the beginning, it didn't have the power to do it. Does that seem to come close to what Espinoza contemplates? I don't think that's close at all to what Espinoza is contemplating, and I don't think that's close to what this court has contemplated in cases that predated Espinoza like Namazer, Central Vermont, Grace Bank, Texlon. All those cases make very clear that a judgment is void only for lack of jurisdiction of the subject matter or the parties are in essence a constitutional due process violation. And in this case, there's no question that the district court had subject matter jurisdiction. Mr. Romero admitted to subject matter jurisdiction in 2003, and perhaps more interestingly, he continues to concede subject matter jurisdiction. In fact, he's invoking the district court's subject matter jurisdiction right now because he's asking the court not to eliminate the entire judgment and render it a nullity, which is usually what would happen in 60B4. It's like the judgment never existed. That's kind of the whole point. He's actually asking the court to keep most of the judgment in place, including the injunctive relief, but eliminate one provision. That's not the essence of what 60B4 is trying to do. But if I could just get back to Crosby for one second, though, which is that I do think if Crosby is being read more broadly to sort of add this third category to 60B4, then I do think it has been eclipsed or overruled, whatever the right term is, by Espinoza. Because Espinoza is very, very clear that an error, a substantive error, is not enough. There was actually a legal error in Espinoza. There was a problem under the bankruptcy rules. And the court said that wasn't sufficient under 60B4. I do think it's also important to talk about that if 60B4 is expanded, not only would that conflict with Espinoza, but that would create serious problems. There would be no end to litigation if collateral attacks could be made at any time. Courts, as you know, obviously need finality to function. But also courts, it's a federal judicial policy that courts have been reluctant to reopen consent judgments, including through use of 60B. In essence, courts have said a deal is a deal, even if there's an error or even if there's a change in law. And I'd point the court to the Mazur, as well as a First Circuit decision called Bock-Olds that was cited in Espinoza. Both of those were consent decree or stipulation cases where the argument was that 60B4 should be granted because there was a change in law. And the court said that's simply not one of the two categories that voidness covers. Do you agree with Ms. Little that the SEC is one of only two federal agencies that have such a rule? And if so, why? I mean, why does the SEC continue to have this rule? Sure. I don't know if it's actually only two, but I agree that there is a small number of agencies. And the reason the SEC has this rule is it is important to the commission when it is settling cases that if an individual wants to deny after reaching agreement, that the commission has the ability to revive the case and then test its allegations and its evidence in court. And that is the only relief available here. I know Ms. Little in her briefs has talked about this being a prior restraint or suggesting that this has an injunctive effect. It is simply not an injunction. It is a contractual remedy with only one possible form of relief, and that is to be able to try the case. Because the commission, if there's going to be denials and if it's given up its right to try its case in the public interest, there's going to be denials. The commission wants to be able, again, to have the option to be able to move the district court to go back and try its case with evidence, not by press release. Have there been other cases where the SEC has exercised that right when there's been a violation? Has that come up? It has not come up in the last decade. I can't give you, Your Honor, sort of a definitive answer about prior 10 years, but we have not moved to vacate a consent judgment in the last 10 years. And there's no evidence the SEC has ever moved for a contempt even beyond 10 years? You're not aware? We have never moved for a contempt on these grounds. Other parts of the consent judgment, the injunctive parts, that's different. But as to the no-deny provision, we have never moved for contempt because we can't. There's no injunctive relief, and we have prescribed as a contractual matter the only remedy we can seek. Let me ask you about the due process prong of the argument. My understanding is that you read Espinoza to limit any due process category to notice an opportunity to be heard. And any other alleged due process issues are not actionable under 60B4. Is that your position? That is our position, yes. And I think in this case, it's very clear Mr. Romero had noticed an opportunity to be heard. He was represented by a very experienced defense counsel. He participated in the district court proceedings, and he voluntarily agreed to resolve the action through a consent judgment. But I also just want to say one other thing, which I think Espinoza got it right when it limited the sort of universe of potential due process problems to notice an opportunity. It makes sense within the context of what voidness is about. I mean, the problem with notice and opportunity and due process, which often arise in default judgment cases, it's almost like the court isn't acting in an adjudicatory capacity because it doesn't have a party in front of it. Or in one of this court's cases, a corporation is attempting to proceed pro se, which is not permissible. Absent class members haven't received notice. The problem there, the due process problem, apart from a constitutional issue, the reason why voidness becomes important is, again, it's almost like the court doesn't have both sides in front of it. It's not serving that core adversarial capacity. Before you run out of time, how do you respond to the argument that a litigant has no choice before the SEC and the rules say this is the way it's going to be? And so you can't settle unless you agree to this. I mean, you don't have to settle. But yes, it's correct. I mean, no one has to settle. The policy does not force anyone to settle. But it does state that the commission is not going to accept settlements and it's not going to agree to terms if this provision isn't in there. And again, if there's no admissions, if I could just finish and answer your question, Your Honor. Yes. But that does not make it a an unconstitutional condition. The court's been very clear about what can happen in bargaining. And there is absolutely no case out there that suggests that you somehow have a right to settle in that that's somehow a condition attached to that becomes an unconstitutional condition. Thank you, Mr. Brugger. We'll hear rebuttal. Well, on this last point that you somehow don't have a right to settle, we cited the case, several of them, where someone had been required in a settlement to agree to not say not run for public office in the future. And courts strike down those provisions because they are unrelated to the core dispute and governments may not impair your right to run for public office as part of a settlement agreement. And similarly, here, invoking Crosby, the SEC cannot condition your right to settle with a gag that will reopen the prosecution against you. Your right to speak is never on the table in this case. If the SEC wins, you can speak. If the SEC loses, you can speak. So this gag, this silencing of people only comes up when in the 98 percent of the cases that settle. But it is not something win or lose. It is a subject of bargaining and it should never be the subject of bargaining. On the Espinoza case, this direct quote from Espinoza is, this case presents no occasion to engage in such an arguable basis for jurisdiction inquiry or to define the precise circumstances in which a jurisdictional error will render a judgment void. That language was also recognized in the Brumfield decision in the Fifth Circuit. And the Brumfield decision carefully looked at that language because the Fifth Circuit has a rule very like the Second Circuit rule that it takes a more nuanced look at what jurisdictional errors are. And the Fifth Circuit concluded that the that the court had not ruled definitively definitively Espinoza court had not definitively interpreted the rule. And after Espinoza, Judge Sack in this district held that the standard for under 60B-4 is if a court lacks jurisdiction, which we claim here because it lacks the power to enter the order, or if it acts in a manner inconsistent with due process of law, which is a different standard than what the Supreme Court suggests in Espinoza. But that was not at stake. And so this circuit, the Second Circuit, has a different and a more nuanced definition of what is appropriate under 60B-4 and that has not been changed by Espinoza. Finally, I might add, too, in terms of the passage of time, another case in the Fifth Circuit called Bloodworth-Bond says the reason why you must grant relief when the judgment is void is because the passage of time cannot cure a void judgment. A void judgment must always be set aside. And that's what Crosby provides for here. Congress itself could not pass this rule as a statute. How do we know that? The McBride decision, which is in our briefing. There, the Congress had passed an act, surprisingly, that it was under judicial discipline and judges were told they had to keep confidential anything that went on and couldn't talk about it. Judge McBride challenged that. The district court set it aside as a clear prior restraint that violated the First Amendment. Now, if judges subject to discipline are free to speak about their charges, all Americans should enjoy that same right. And in terms of the fact that this practice has been going on for a long time, Justice Gorsuch said in the McGirt, Oklahoma case, if unlawful acts performed long enough and with sufficient vigor are never enough to amend the law. To hold otherwise would be to elevate the most brazen and longstanding injustices of the law, both rewarding the wrong and failing those in the right. Since Crosby was decided that has been the law of this circuit, that you cannot enter a judge, rather courts may not enter consent agreements or settlements that are for prior restraint on the parties before them. And this court is bound by the unreversed decision in Crosby. Thank you. Thank you, Miss Little. We will take the matter under advisement. Very, very well argued by both sides. Very helpful. Thank you. Thank you.